983 F.2d 1072
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
JAY DEE CONTRACTORS, INCORPORATED, Plaintiff-Appellant,
v.
TEWS COMPANY, INCORPORATED, formerly known as Tews Lime &
Cement Company, Defendant-Appellee.
 No. 92-1859.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 1, 1992.
Decided Jan. 15, 1993.
 
 Before FLAUM, and RIPPLE, Circuit Judges, and DONALD P. LAY, Senior Circuit Judge.*
 
 ORDER
 
 1
 This is a diversity case governed by the Wisconsin Uniform Commercial Code and tried before the Honorable John W. Reynolds, United States District Judge for the Eastern District of Wisconsin. Jay Dee Contractors, Inc. (Jay Dee), while performing tunnel work for the Milwaukee Metropolitan Sewerage District, purchased concrete from Tews Company, Inc., formerly known as Tews Line & Cement Co. Jay Dee was retained to build a horizontal tunnel with manholes. Jay Dee anticipated moist and unstable soil conditions through which the tunnel boring machine would proceed, and was therefore concerned that the ground might collapse into the tunnel while it made the connections between the drop manholes and the tunnel. Jay Dee determined that some kind of "weak" concrete plugs might be strong enough to prevent the excavations from collapsing, yet be weak enough for the tunnel boring machine to penetrate. Jay Dee sought a mixture of "soft concrete" from Tews which would possess a strength in the range of 600 to 800 pounds per square inch (psi), but not exceeding 1000 psi. This "concrete plug" procedure was unique in that it had never before been attempted.
 
 
 2
 Tews created three sample concrete mixtures which would meet Jay Dee's psi specifications at twenty-eight days.[1] All three mixtures had identical amounts of cement, but contained varying amounts of fly ash. Jay Dee had the opportunity to evaluate the samples and in fact performed some crude tests on them. Jay Dee ultimately selected the middle sample with a psi of 605. There was no written contract between Jay Dee and Tews, and the oral discussions provided the basis of their relationship.
 
 
 3
 Jay Dee poured the manholes in May and June of 1987. The tunnel project was delayed, however, and the boring of the concrete did not occur until slightly more than a year later. When the boring for the manholes occurred, the concrete was too hard for the tunnel boring machines to penetrate. The concrete strength in the plugs had increased to a strength in the range of 1560 to 3965 psi.[2] The tunnel boring machine was damaged and Jay Dee had to use extraordinary measures to excavate the concrete from the manholes.
 
 
 4
 The trial court found that neither party expected that the manhole concrete would increase from the twenty-eight day strength by 400%. The trial court also found that there were no discussions between the parties concerning (1) the strength the concrete should or would reach after 28 days; (2) the ASTM C94 industry standard; (3) the time when the manholes would be bored through, except that it would occur at a future date; (4) concrete's propensity to gain strength over time; (5) concrete's propensity to gain strength when exposed to water; and (6) that adding fly ash would result in an increase in the concrete's strength over time.
 
 
 5
 Jay Dee asserted that Tews breached an express warranty, Wis.Stat. 402.313 (1989-90), implied warranty of merchantability, Wis.Stat. 402.314 (1989-90), and an implied warranty of fitness for a particular use. Wis.Stat. 402.315 (1989-90). The district court determined that Tews had not carried its burden of proving that Tews had breached any express or implied warranties. Specifically, it concluded that (1) there was no affirmation of fact, promise, description or sample warranting the concrete's one year strength; (2) there was no evidence that the goods were not fit for the "ordinary purposes" for which the goods were used; (3) Jay Dee did not rely on Tews to design a concrete mix that would meet certain specific requirements after a year; and 4) that the burden to warrant the ultimate application after a period of time not contemplated by either party should not be placed on Tews. Jay Dee now appeals.[3]
 
 
 6
 We find that the trial court has not misapplied Wisconsin law. Under Wisconsin law, Jay Dee bears the burden of proving that Tews made factual representations about the concrete's quality and condition. Ewers v. Eisenzopf, 88 Wis.2d 482, 487, 276 N.W.2d 802 (1979). The district court found that there was no affirmation of fact, promise, description, or sample representing what the concrete's one year strength would be. Jay Dee does not appeal the denial of its claim for breach of express warranty.
 
 
 7
 On appeal, Jay Dee argues that the "weak concrete" Tews provided Jay Dee had hardening characteristics that made it not reasonably fit for the general purposes for which such "weak concrete" was sold. Therefore, it argues Tews breached its implied warranty of merchantability. We do not agree.
 
 
 8
 Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used. Wis.Stat. § 402.314 (1989-90). "[T]he ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to the uses which are customarily made of the goods in question." U.C.C. § 2-315, comment 2 (1990). The district court found that both parties agreed that the application of the weak concrete and the entire manhole procedure were unique. Therefore, the court was correct in concluding that Tews had not breached any implied warranty of merchantability.[4]
 
 
 9
 Jay Dee also claims that the district court erred in holding that Tews had breached an implied warranty of fitness for a particular purpose. Wisconsin law states
 
 
 10
 Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under S. 402.316 an implied warranty that the goods shall be fit for such purpose.
 
 
 11
 Wis.Stat. § 402.315 (1989-90). Jay Dee argues that Tews had reason to know the particular purpose for which the concrete was to be used and that Jay Dee was relying on Tews' expertise in providing an appropriate mix. The district court however found that Jay Dee was an expert in tunneling and had specifically indicated the strength of the concrete it needed--between 600 and 800 psi. Jay Dee thus did not rely on Tews to design a concrete mix that would meet certain specifications after a year. Indeed, the development of the concrete after a period of time was never discussed by the parties. The district court was correct in concluding that Tews did not breach an implied warranty of fitness for a particular purpose.
 
 
 12
 Based on the trial court's analysis and opinion, we affirm.
 
 
 
 *
 Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation
 
 
 [1]
 The industry standard, ASTM C94, stated that "when the [ready-mixed concrete] purchaser requires the manufacturer to assume full responsibility for the selection of the proportions for the concrete mixture ... unless otherwise specified the age at [compressive strength] test shall be 28 days." (App. 4)
 
 
 [2]
 According to the record, this was the result of fly ash in the cement which has the characteristic of making cement harden over time
 
 
 [3]
 Jay Dee challenges only the conclusions of the law the trial court drew from its findings of fact, not the findings themselves
 
 
 [4]
 Jay Dee argues in its brief that other jurisdictions have held that the warranty of merchantability entails a duty on the part of the merchant to warn or advise buyers of risks associated with ordinary or reasonably foreseeable uses of their products. We need not reach this question because no implied warranty of merchantability exists here